THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY RANDLE, Defendant-Appellant.

Second District   No. 2—85—0647

Opinion filed September 26, 1986.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor's Office, of Springfield, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of Elgin, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On June 3, 1985, after a jury trial in the circuit court of Lake County, defendant, Gregory Randle, was found guilty of two counts of armed violence and was sentenced to concurrent extended terms of 50 and 30 years' imprisonment. On appeal defendant argues: (1) that the trial court erred in allowing the State to impeach a defense witness with the witness' prior misdemeanor convictions; and (2) that the trial court erred in refusing to consider his potential for rehabilitation in sentencing him.

At approximately 7:30 p.m. on November 3, 1982, Henry Armstrong, Billy Peet and Mack Dixon entered the Handy Liquor Store located at 817 Tenth Street in North Chicago. While the three men were standing near the service counter, defendant, along with three other men, entered the store. While the testimony at trial differed over what occurred next, it is clear that a fight broke out between the two groups, during which Armstrong, Peet and Dixon each received lacerations to the face and head. The primary issue at trial was whether defendant's group entered the store armed and started the fight or whether defendant's group was unarmed and acted in self-defense.

Denise Handy, an employee at the liquor store at the time of the fight, testified that while Armstrong, Peet and Mack were in the store defendant, along with three other men, entered the store carrying baseball bats and a "silver flash." Handy testified that defendant had the "silver flash" in his hand and that she saw defendant attack Armstrong, Peet and Dixon, all of whom were bleeding from the head area after the fight. On cross-examination Handy stated that several windows in the store were broken, that one specific plexiglass window was broken when struck by Dixon's head, and that there was broken glass all over the store. Handy also stated that she could not recall who actually started the fight.

Dr. Jehangir Mistry testified that he treated Armstrong, Peet and Dixon on the night of the incident. Peet had four lacerations, two on the scalp and two on the face. The lacerations required a total of 44 stitches to close. Dixon had one laceration on the face which was muscle deep and required 15 stitches to close. Armstrong had one laceration on the back of the head which required eight stitches. Dr. Mistry

also testified that the lacerations to Peet and Dixon were made by an instrument with a very sharp edge such as a razor, that he found no glass fragments while cleaning the wounds, and that the wounds were not consistent with having been caused by a broken plexiglass window. On cross-examination Dr. Mistry admitted that wounds similar to those received by Peet and Dixon could be caused by a sharp piece of glass such as a broken beer bottle. Dr. Mistry also stated that Armstrong's wound could have been caused by a razor or similar sharp object, or by a baseball bat or similar blunt object.

Billy Peet testified that while he was in the liquor store, defendant, along with three other men, entered the store, left, and returned shortly thereafter carrying weapons. One man was carrying a two-by-four and defendant was carrying a "flash." Peet stated that a dispute arose between defendant and Dixon and that he attempted to break it up by standing between the two men. When he did so defendant struck him, knocking him to the ground. As he looked up from the floor, he saw that defendant was carrying something that looked like a razor. He then lost consciousness for a short time. Peet further stated that when he regained consciousness he again became involved in the fight for a short time until it ended. After the fight was over, he noticed that he had been cut on the face. Lastly, Peet testified that he was not armed during the fight and was carrying only his cane when the fight began. Peet required a cane to walk because of a broken back he had incurred in a car accident in 1976.

On cross-examination Peet admitted that he had previously stated, both to a police officer shortly after the offense and at a prior trial, that he could not describe any of his attackers. Further, Peet admitted that he did not see who actually cut him because he was unconscious at the time, but that he did not believe he had been cut by a beer bottle. Peet also stated that he did not remember any bottles being thrown around during the fight because there were no bottles in the customer area of the store to be thrown around.

Henry Armstrong, who was also handicapped and could not walk more than a short distance without crutches, testified that the defendant's group entered the liquor store, left without incident and returned shortly thereafter carrying weapons. One man was carrying a large stick, a two-by-four or a bat, while the other three were carrying razor blades or knives. Armstrong stated when defendant's group entered the store the second time they immediately attacked Peet, cutting him and knocking him down. Defendant then attacked him (Armstrong), cutting him on the back of the head, while the three other men attacked Dixon, cutting him also. On cross-examination Armstrong ad-

mitted that he did not know who actually started the fight and that he did not actually see a weapon in defendant's hand, but stated that it must have been defendant who cut him because defendant was the only one close enough at the time of the cutting to have done it.

The primary witness for the defense was Earnest Smith. Smith testified that he was with defendant in the liquor store at the time in question and that the fight started when Dixon struck him in the face. Smith also testified that after the fight started people came into the liquor store off of the street to join into the fight and that there was glass flying everywhere during the fight. Lastly, Smith stated that neither he nor any of the men with him had any type of razor blade, knife or similar weapon during the fight. On cross-examination the prosecution, over defendant's objection, was allowed to introduce Smith's prior battery and aggravated-assault convictions to show his propensity to violence.

The jury found defendant guilty of aggravated battery and armed violence to Dixon and Peet and not guilty of aggravated battery and armed violence to Armstrong. The cause proceeded to sentencing, where the court considered the testimony and arguments of counsel along with the presentence report. After assessing the factors in aggravation and mitigation, the court imposed extended term sentences of 50 years' imprisonment for the armed-violence conviction stemming from the injuries to Peet, and 30 years' imprisonment for the armed-violence conviction stemming from the injuries to Dixon. Defendant thereafter filed this appeal.

I

■ The first issue raised is whether the trial court erred in admitting evidence of Smith's prior misdemeanor convictions for battery and aggravated assault. Defendant argues that since both convictions are misdemeanors and do not involve dishonesty, they were improperly used for impeachment under *People v. Montgomery* (1971), 47 Ill. 2d 510, and *People v. Stover* (1982), 89 Ill. 2d 189.

Both *Montgomery* and *Stover* dealt with impeachment of a witness by evidence of a prior conviction. Under *Montgomery*, where the court adopted Proposed Federal Rule of Evidence 609, a prior misdemeanor not involving dishonesty or false statement may not be used to attack the credibility of a witness. Under *Stover*, such a misdemeanor conviction based on a plea of guilty may not be used to impeach a witness who was involved in the same offense even if the conviction would arguably amount to a prior inconsistent statement.

In the present case, however, Smith's prior convictions were not

used to impeach him. That is to say, they were not used " '[f]or the purpose of attacking the credibility of a witness' " (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516) as governed by proposed Rule 609. Rather, Smith's prior convictions were used as substantive evidence to show his propensity to violence and therefrom infer that Smith was the initial aggressor. Defendant's reliance on *Montgomery* and *Stover*, therefore, is misplaced.

When a theory of self-defense is raised in a battery or homicide case, evidence of the peaceful or violent character of either party is relevant as circumstantial evidence to show whether the complainant or the accused was the initial aggressor. (McCormick, Evidence sec. 199, at 584 (character of the accused); sec. 193, at 572-73 (character of the victim) (3d ed. 1984).) However, while such character evidence is always relevant, it may not always be admissible. Because of the inflammatory nature of such evidence, it must first be determined whether the danger of undue prejudice outweighs the relevance of the evidence. *People v. Lynch* (1984), 104 Ill. 2d 194, 201-202.

Under this balancing test, character evidence offered by the accused to show the complainant's propensity to violence is admissible because the danger of undue prejudice to the accused lies in not admitting such evidence. (*People v. Lynch* (1984), 104 Ill. 2d 194, 201-02.) On the other hand, similar character evidence offered by the prosecution to show the accused's propensity to violence is generally inadmissible because the danger of unfair prejudice to the defendant in being portrayed as a "bad man" substantially outweighs the probative value of the evidence. (E. Cleary & M. Graham, Illinois Evidence sec. 404.3, at 159 (4th ed. 1984).) Such evidence of bad character may be introduced by the prosecution only if the defendant first opens the door by introducing evidence of good character to show that he is a quiet and peaceful person. McCormick, Evidence sec. 191, at 566 (3d ed. 1984); E. Cleary & M. Graham, Illinois Evidence sec. 404.3, at 160 (4th ed. 1984).

In this case, the character evidence was not offered against defendant or the complainant, but was offered against a third party who was with defendant at the time of the offense. Neither party cites, nor has our research divulged, a case dealing with character evidence admitted to prove the propensity to violence of a third person who was with the accused.[1] The State argues that the prejudice to a defendant

---

[1] In *People v. Moretti* (1955), 6 Ill. 2d 494, the court upheld the admission of similar character evidence against a third party who was a common victim in the homicide for which the defendant was being tried.

in allowing the prosecution to show a defense witness' propensity toward violence is minimal and, therefore, such evidence was properly admitted. We disagree that the prejudice would be minimal.

The State may not initially introduce evidence of bad character against a defendant because it is feared that the jury will be swayed to convict, based not on a defendant's actual guilt of the offense charged, but because the defendant is a bad person. (E. Cleary & M. Graham, Illinois Evidence sec. 404.3, at 159 (4th ed. 1984); 29 Am. Jur. 2d *Evidence* sec. 340, at 390 (1967).) While this precise type of prejudice may not be present where the character evidence is used against a defense witness rather than against defendant himself, a similar form of prejudice, guilt by association, is present. We find that the undue prejudice from such character evidence outweighs its probative value, and, therefore, we hold that the trial court erred in admitting Smith's prior misdemeanor convictions to show his propensity to violence.

██ ▌ The State argues in the alternative that, if it was error to admit such character evidence, it amounted to harmless error because the competent evidence of defendant's guilt was very strong.

A reviewing court will not reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 17, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.) Where the competent evidence shows beyond all reasonable doubt that the defendant is guilty, the error will not ordinarily require reversal of the conviction. (20 Ill. 2d 11, 17.) Stated differently, where the properly admitted evidence is so overwhelming that no fair-minded juror could reasonably have voted to acquit, errors in the admission of evidence do not require reversal. *People v. Carlson* (1982), 92 Ill. 2d 440, 449.

Having reviewed the record, we find that the competent evidence proves defendant's guilt beyond all reasonable doubt and shows that no fair-minded jury could reasonably have voted to acquit. Defendant's claim that he acted in self-defense and that the victims were cut by flying glass is wholly unbelievable for several reasons.

First, defendant's group outnumbered the victims' group four to three. One of defendant's group was 6 feet 3 inches to 6 feet 4 inches, weighed approximately 250 pounds, and was much larger than anyone in the victims' group, two of whom were physically handicapped and unable to walk without the use of a cane or crutches. Second, the three victims received six lacerations which required a total of 67 stitches to close. One of the lacerations was muscle deep and none contained glass fragments. Third, the one occurrence witness who was not involved in

the fight, Denise Handy, testified that defendant's group entered the liquor store armed with weapons including a "silver flash." While defendant attempted to impeach her testimony as to who actually cut the victims, her testimony that defendant's group was armed when they entered the store was unimpeached and was corroborated by the testimony of the victims.

In light of this evidence, we find defendant's claim that one of the victims started the fight, that he acted only in self-defense, that he was not armed, and that the victims were cut by flying glass to be inherently unbelievable. We hold, therefore, that the improper admission of Smith's prior misdemeanor convictions to have been harmless error.

## II

Defendant next argues that the trial court abused its discretion in sentencing him because the court refused to consider his potential for rehabilitation as required by article I, section 11, of the 1970 Illinois Constitution, which provides in pertinent part:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, sec. 11.

In support of his argument, defendant relies on *People v. Gibbs* (1977), 49 Ill. App. 3d 644, where the court stated:

"Not only must the judge consider the rehabilitative or restorative factor, he must also act on it as an objective of his sentence. Some degree of discretion is permitted *** but the judge may not resign to total retribution one who has a chance of future restoration to useful citizenship in the free society." 49 Ill. App. 3d 644, 648.

Defendant also relies on the trial court's statement:

"I see absolutely no basis for first, I see absolutely no possibility of rehabilitation in this type of individual. I think it would be fruitless to consider that possibility."

Defendant interprets this comment as an indication that the trial court refused to consider his potential for rehabilitation.

This precise argument, including defendant's reliance on *Gibbs*, was previously rejected in *People v. Shumate* (1981), 94 Ill. App. 3d 478. In *Shumate* the trial court made a similar statement that it believed that the defendant had no potential for rehabilitation, and, therefore, it was imposing sentence solely on the basis of punishment. On appeal the court upheld the defendant's sentence stating:

"We believe that a defendant's potential for rehabilitation may

be so minimal that it need not be reflected in the sentence actually imposed. Were it otherwise neither the death penalty nor a natural life sentence without possibility of parole could be imposed." 94 Ill. App. 3d 478, 485.

Further, we agree with the court in *Shumate* that *Gibbs* does not hold that a sentencing judge may not find, in a proper case, that a defendant's potential for rehabilitation is either nonexistent or so slight that the sentence imposed may be based solely on principles of retributive justice. (*People v. Shumate* (1981), 94 Ill. App. 3d 478, 485.) To the contrary, *Gibbs* stated only that a sentencing judge may not "resign to total retribution one who *has a chance of future restoration* to useful citizenship." (Emphasis added.) *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 648.

In the instant case we cannot say that the trial court abused its discretion in finding that defendant had no rehabilitative potential. In a companion case to the present prosecution, defendant was found guilty of armed violence for shooting a cab driver in 1982. Defendant shot the driver three times, leaving him paralyzed below his shoulders and arms. Defendant also has a prior adult conviction for unlawful use of weapons and, as a juvenile, was placed on court supervision as a result of a plea to a three-count delinquency petition which charged him with unlawful use of weapons, discharging an air rifle on a public street, and resisting arrest. Lastly, the testimony at the sentencing hearing showed that defendant had threatened two different police officers during the investigations of the present offense and the shooting of the cab driver. In light of the violent and brutal nature of these offenses, the fact that two of the victims were handicapped, and defendant's criminal background, we cannot say that the trial court's finding that defendant lacked any potential for rehabilitation was unsupported by the evidence, or that the sentences imposed violated article I, section 11, of the Illinois Constitution of 1970.

For the reasons stated herein, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.