THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
C.A. DEVINE, Defendant-Appellant.

Third District No. 3—89—0598

Opinion filed July 13, 1990.

Gregory L. Barnes, of Gregory L. Barnes, Ltd., of Decatur, for appellant.

Robert D. Gaubas, of Robert D. Gaubas, Ltd., of Peoria (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, the defendant, C.A. Devine, was found guilty of murder and sentenced to a term of 60 years' imprisonment in the Department of Corrections. The defendant appeals.

On appeal, the defendant argues that the trial court erred: (1) by

allowing the prosecution to present evidence of the defendant's prior misdemeanor convictions, (2) in not granting a mistrial after a prosecution witness alluded to the defendant's earlier trial, (3) by improperly allowing a prosecution witness to testify as to hearsay statements, and (4) by giving the defendant an excessive sentence.

The record reveals that on February 27, 1986, the defendant and Essie Morris, the victim, had a fight. Morris was the defendant's live-in girlfriend. Morris died as a result of that fight. The defendant was charged with murder and was convicted. The defendant's original conviction was reversed by this court in an unpublished decision No. 3–86–0626 based on improper jury instructions. This is an appeal of the retrial.

At trial, Peoria city police officer Jack Baize testified that at approximately 7 p.m. on the date of the murder he was the first to arrive at the defendant's residence. The defendant met Baize at the door. The defendant informed him that "a lady was in bed, and she would not wake up." The defendant led Baize to the bedroom where Baize found the victim lying in bed, covered with clothes and with her arms folded. Baize took the victim's vital signs and determined that she was dead. After examining the residence, Baize spoke with the defendant, who informed him that there had been a fight that evening. Baize then gave the defendant his *Miranda* warnings and turned the questioning over to Officer Pat Rabe, who had since arrived at the scene.

The defendant told Rabe that he and the victim argued over a gun the victim had allegedly stolen from the defendant's friend "Frog" and that it "got deeper and deeper as the day went on." The defendant told Rabe that the victim pointed the gun at him and said she was going to kill him. The defendant told Rabe that he took a broomstick and struck the victim in an attempt to defend himself. The defendant stated that he later went to see how the victim was doing and found her motionless in bed whereupon he called the police.

Dr. David Demick, the Peoria County coroner's physician, testified regarding the autopsy he performed on the victim. Dr. Demick testified that the victim suffered a large bruise and deep laceration in the back of her head caused by a blow from the back. That blow to the head caused some hemorrhaging on the surface of the victim's brain. The victim was also covered with a pair of bruises running parallel on her shoulders and buttocks. The bruises indicate that she was struck with a rod-like instrument. An ulcerated area on her buttocks established that a portion of her flesh had been torn away. Tiny splinters of wood were found in this ulcerated area. In addition, the kitchen gar-

bage can contained pieces of a broken broomstick. Dr. Demick also noted that the victim had small lacerations in the whites of her eyes from constriction of the veins in her neck, consistent with strangulation.

According to Dr. Demick, the victim also suffered massive internal injuries. These injuries included three broken ribs, a bruised heart, and a liver that was broken apart. Dr. Demick stated that considerable force was necessary for these injuries, and he noted that the liver injury was of the type usually associated with an automobile accident. Dr. Demick also testified that the victim's stomach and pancreas were bleeding and disrupted. Dr. Demick determined that the primary cause of death was manual strangulation. Dr. Demick came to this conclusion because he found the victim's larynx fractured and the soft tissue surrounding the larynx to be hemorrhaging.

The prosecution also presented the testimony of Cassandra Tyler, the victim's daughter. Tyler testified, over defense counsel's objection, that she had observed her mother with a bruised lip in December of 1985 and that her mother said the defendant had struck her, causing the bruise.

The defendant testified that he and the victim had lived together since September 1985. He stated that he had seen the victim carrying a gun on occasion and that she became violent when on cocaine. He also commented that the victim had once shot at an old boyfriend.

With respect to the incident here, the defendant testified that in the morning the two talked about why the victim had allegedly robbed the defendant's friend "Frog." The victim told the defendant that she was going to kill the defendant. She then produced a gun and the two wrestled. The defendant eventually took the gun from the victim.

Thereafter, the victim somehow retrieved the gun a second time and threatened to kill the defendant. The defendant stated that they started fighting and he used a broom to get her away. When they stopped fighting, the victim went back to bed. After periodically checking on her condition, the defendant found the victim unresponsive. He then called the police.

In addition, as rebuttal evidence the prosecution offered, over the objection of defense counsel, certified copies of the defendant's two prior misdemeanor battery convictions. The trial court admitted both convictions and published the same to the jury.

We first address the issue whether the trial court erred in admitting evidence of the defendant's prior misdemeanor convictions for battery. The defendant argues that since both convictions are misdemeanors and do not involve dishonesty, they were improperly used for

impeachment purposes under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

 The supreme court in *Montgomery* was faced with the impeachment of a witness by evidence of a prior conviction. There, the court adopted proposed Federal Rule of Evidence 609: a prior misdemeanor not involving dishonesty or false statement may not be used to attack the credibility of a witness.

In the instant case, however, the defendant's prior convictions were not introduced for general impeachment. Rather, the defendant's prior convictions were used as refutational evidence to show his propensity to violence and therefrom infer that the defendant was the initial aggressor. The defendant's reliance on *Montgomery* is, therefore, misplaced.

 █ Subject to well-defined limitations, evidence regarding the character of a defendant or a victim is relevant and admissible. (R. Ruebner, Illinois Criminal Trial Evidence 34 (1986).) When a theory of self-defense is raised in a battery or homicide case, evidence of the peaceful or violent character of either party is relevant as circumstantial evidence to show whether the complainant or the accused was the initial aggressor. (*People v. Randle* (1986), 147 Ill. App. 3d 621, 498 N.E.2d 732.) However, while such character evidence is always relevant, it may not always be admissible. (*People v. Randle* (1986), 147 Ill. App. 3d 621, 498 N.E.2d 732.) Because of the inflammatory nature of such evidence, it must first be determined whether the danger of undue prejudice outweighs the relevance of the evidence. *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.

As the court in *Randle* noted:

> "Under this balancing test, character evidence offered by the accused to show the complainant's propensity to violence is admissible because the danger of undue prejudice to the accused lies in not admitting such evidence. [Citation.] On the other hand, similar character evidence offered by the prosecution to show the accused's propensity to violence is generally inadmissible because the danger of unfair prejudice to the defendant in being portrayed as a 'bad man' substantially outweighs the probative value of the evidence. [Citation.] Such evidence of bad character may be introduced by the prosecution only if the defendant first opens the door by introducing evidence of good character to show that he is a quiet and peaceful person." *People v. Randle* (1986), 147 Ill. App. 3d 621, 625, 498 N.E.2d 732, 736.

In the instant case, in support of his claim of self-defense, the

defendant testified that the altercation between himself and the victim began when he argued with her over her alleged theft of money, cocaine, and a gun from the defendant's friend "Frog." The defendant testified that the victim usually carried a Derringer and that she allegedly told him that she once shot at an old boyfriend. The defendant further testified that the victim was high on cocaine on the night of this incident and that she was violent when on cocaine. The defendant also testified that he was a peaceful person. As a result of this testimony, the trial court later permitted the prosecution to introduce the defendant's prior misdemeanor convictions for battery.

In addition, the defendant introduced evidence of the victim's prior misdemeanor conviction for unlawful use of weapons and several other alleged acts of violence in order to establish that she had a violent character. The defendant hoped to establish that it would be more likely for the victim to be the aggressor because of her alleged violent character. By introducing this evidence, however, the defendant opened the door for the prosecution to introduce evidence of the defendant's bad character. The only question relevant here is whether the prejudice to the defendant in introducing the prosecution's evidence substantially outweighs the probative value of the evidence.

■ The prosecution may not initially introduce evidence of bad character against a defendant because it is feared that the jury will be swayed to convict based not on a defendant's actual guilt of the offense charged, but because the defendant is a bad person. (*People v. Randle* (1986), 147 Ill. App. 3d 621, 498 N.E.2d 732.) However, where, as here, the defendant initially introduces evidence that the victim had a violent character and that he was a peaceful person, the interests of fairness require that the prosecution be allowed to rebut this portrayal by the defendant. Here, we find that the probative value from such character evidence outweighs any prejudice to the defendant, and, therefore, we hold that the trial court did not err in admitting the defendant's prior misdemeanor convictions.

The defendant next argues that the trial court erred in denying the defense motion for a mistrial made after a prosecution witness alluded to the defendant's earlier trial on this charge. The remark complained of came during Dr. Demick's testimony. Dr. Demick performed an autopsy on the victim and testified for the prosecution at the first trial in 1986. During the first trial, Dr. Demick used and testified from a human form chart. Dr. Demick used the same chart at the second trial. Asked to identify the chart at the second trial, Dr. Demick replied that "this is the chart I marked myself with red ink during the last trial of this defendant." The defense counsel requested a side-

bar and, outside the jury's presence, moved for a mistrial. The trial court denied the motion. The trial court found that the prosecution had not intended to elicit that particular response from the witness. The trial court also suggested that the jury might not have heard the witness. The trial court then instructed the jury to disregard the witness' statement "during the last trial of this defendant."

The defendant in the instant case contends that the prejudicial effect of the statement continued throughout the trial. The defendant suggests that the jury could reasonably conclude that the defendant had been tried on this charge before resulting in a conviction with a reversal (as actually happened) or a jury was unable to reach a verdict resulting in a mistrial.

The prosecution counters by citing *People v. Jones* (1988), 123 Ill. 2d 387, 528 N.E.2d 648, wherein the Illinois Supreme Court was confronted with a similar issue. In *Jones*, a prosecution witness called to testify concerning the chain of custody was asked when she had seen certain tubes of blood. The witness answered "Just at the last trial." (123 Ill. 2d at 408.) The trial court, there, refused the defense motion for a mistrial and instructed the jury to disregard the comment. The supreme court, in affirming the trial court, noted that the jurors did not learn of the outcome of the earlier trial and were not told the identities of the parties at the earlier trial. Moreover, the supreme court emphasized that the trial court admonished the jurors to disregard the witness' answer. *People v. Jones* (1988), 123 Ill. 2d 387, 408, 528 N.E.2d 648, 658.

■■ Similarly, in the instant case, the jurors did not learn the outcome of the earlier trial and the trial court admonished them to disregard the witness' answer. Based on *Jones*, therefore, we conclude that the brief reference to the earlier trial did not prejudice the defendant or otherwise impair his right to a fair trial. *People v. Jones* (1988), 123 Ill. 2d 387, 528 N.E.2d 648.

■■■ The defendant next argues that the trial court erred in permitting the victim's daughter to testify that she observed her mother with a bruised lip in December of 1985, and that the victim told her that the defendant struck her. Generally, evidence of the commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission. (*People v. Gage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805.) In the instant case, the evidence presented of the defendant's alleged prior striking of the victim two

months before her death has no relevancy to proximity to time and place, does not go to identity and does not constitute evidence to prove design, plan, or motive. Furthermore, the evidence constitutes hearsay without an applicable exception. We find, therefore, that the trial court erred in admitting this evidence.

■ Our review of the record, however, indicates that the admission of this evidence, while erroneous, was also harmless. Testimony relating to other offenses does not *per se* constitute grounds for reversal. (*People v. Wallace* (1983), 114 Ill. App. 3d 242, 448 N.E.2d 910.) Where every element of the crime charged has been established by properly admitted evidence and that evidence is so overwhelming that there is no reasonable probability that the defendant would have been acquitted if the inadmissible evidence had been excluded, the error is harmless. *People v. Wadley* (1988), 169 Ill. App. 3d 1036, 523 N.E.2d 1249.

■ In the instant case, the defendant admitted that he struck the victim. The defendant argues, however, that he was merely acting in self-defense. The evidence presented indicates that the victim was struck repeatedly and killed in a savage manner. The extent of the victim's injuries was so great that no reasonable juror could have found them to be inflicted by a person acting in self-defense. Therefore, it is extremely unlikely that the jury would have acquitted the defendant had the testimony been omitted from the trial. Accordingly, we find this evidence did not so prejudice the defendant as to deny him a fair trial.

■ The defendant finally argues that the trial court abused its discretion in sentencing him to a 60-year term of imprisonment. The trial court based its decision on the particularly brutal and heinous circumstances surrounding the victim's murder. As detailed earlier, the offense committed here was accompanied by exceptionally brutal and heinous behavior. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).) We, therefore, cannot conclude that the trial court abused its discretion in imposing the sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For these reasons the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE, P.J., and GORMAN, J., concur.