NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250613-U

NO. 4-25-0613

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 12, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| JERNELL ETHERLY, | ) | No. 18CF35 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed defendant's 10-year prison sentence for conspiracy to commit unlawful delivery of a controlled substance where the sentence was in the statutory range and defendant had a lengthy criminal history.

¶ 2   Defendant, Jernell Etherly, pleaded guilty to conspiracy to commit unlawful delivery of a controlled substance, a Class 3 felony (720 ILCS 5/8-2(c)(1)(c) (West 2016); 720 ILCS 570/401(d) (West 2016)). Following a sentencing hearing, the trial court sentenced defendant to 10 years in prison. Defendant appeals, arguing that the court's sentence was excessive. For the reasons that follow, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4   On January 17, 2018, the grand jury returned a six-count indictment against defendant, alleging two counts of unlawful delivery of a controlled substance within 1,000 feet of a park (720 ILCS 570/407(b)(1) (West 2016)) (counts I and IV) and four counts of unlawful

delivery of a controlled substance (720 ILCS 570/401(c)(2), (d)(i) (West 2016)) (counts II, III, V, and VI). The indictment alleged that defendant delivered more than 1 gram but less than 15 grams of a substance containing cocaine to confidential informants on two separate days, December 4 and 28, 2017.

¶ 5        Defendant was arraigned on the charges on March 16, 2018. Soon thereafter, defendant was accepted into drug court in Peoria County, Illinois, in connection with an unrelated case. In August 2018, defendant entered an inpatient facility that was monitored by the Peoria County drug court, as well as McLean County pretrial services. Defendant successfully completed inpatient treatment in October 2018. In December 2018, defendant tested positive for tetrahydrocannabinol (THC). In June 2019, defendant tested positive for THC and alcohol. Defendant successfully graduated from Peoria County drug court in September 2019.

¶ 6        Three months later, on February 26, 2020, McLean County pretrial services filed a notice of violation of pretrial supervision, asserting that defendant violated conditions by leaving the state without the trial court's permission and being charged with new offenses. According to the summary of noncompliance, defendant was arrested in Tennessee and charged with driving on a suspended license, possession of two narcotics (Schedule I and II), simple possession, and possession of drug paraphernalia.

¶ 7        On March 2, 2020, the State charged defendant with a new count in the present case: conspiracy to commit unlawful delivery of a controlled substance (720 ILCS 5/8-2 (West 2016); 720 ILCS 570/401(d) (West 2016)) related to the December 4 and 28, 2017, drug buys (count VII) The parties entered into a plea deal, with the State agreeing to dismiss counts I through VI and defendant pleading guilty to the new count. Defendant entered an open plea, with no agreement as to sentencing. The trial court admonished defendant that he was eligible for an

extended term of up to 10 years in prison.

¶ 8         According to the factual basis supplied by the State, the evidence would show that there was a Bloomington vice unit investigation into drug activity, with two controlled-buy transactions involving defendant. The first was on December 4, 2017. At that time, defendant, a passenger in a vehicle, accepted $175 in cash for 2.9 grams of cocaine. During the second buy on December 28, 2017, defendant again accepted $175 in exchange for 2.9 grams of cocaine. During the second transaction, defendant was the driver of the vehicle. When he was stopped by a Bloomington police officer, the officer observed a large amount of money in his right hand, "which pretty clearly was the buy money from the transaction that had just occurred." The State indicated that defendant "then accelerated and drove away from the officer[,] almost striking" the officer's squad car. Defendant kept driving and entered a nearby parking lot "at a high rate of speed, slid on the snow-covered surface, and then struck" another vehicle and "left the scene." Defendant stipulated to the factual basis, and the trial court accepted it. The court admonished defendant about sentencing *in absentia*.

¶ 9         The trial court ordered a presentence investigation report (PSI), but it was never completed. A warrant was issued for defendant on March 11, 2020, and remained outstanding until it was served on April 30, 2024.

¶ 10        Defendant appeared in court on May 1, 2024. A new PSI was ordered. Defendant appeared for his scheduled sentencing hearing on June 24, 2024. The hearing was continued without objection to September 23, 2024. Defendant did not appear for the September 23, 2024, sentencing hearing. A hearing was held in his absence, over defense counsel's objection. The PSI dated June 17, 2024, was admitted into evidence, with no objection.

¶ 11        According to the PSI, defendant completed the eleventh grade of high school and

continued his education at Illinois Welding School, Rend Lake College, Illinois Central College, and Lake Land College, where he earned a certificate in business management, *summa cum laude*.

¶ 12　　　　The PSI stated that defendant was 44 years old and had a long criminal history, dating back to 1997, that included nine felonies for burglary, retail theft, obstructing justice, unlawful delivery of a controlled substance, and unlawful possession of a controlled substance. Defendant was also convicted of 10 misdemeanors, 32 traffic violations, and 9 ordinance violations. At the time of the PSI, defendant had charges pending in two different counties in Illinois, one county in Tennessee, and federal charges in the Illinois Central District. The officer further reported that defendant "ha[d] a history of probation and parole violations."

¶ 13　　　　Defendant had a difficult childhood. At the age of two, he was removed from his mother's care due to her heroin abuse. He was adopted, but his foster mother passed away when he was 13 years old. He then entered foster care and ended up in a group home at the age of 17. Defendant has five children. One son passed away in July 2018.

¶ 14　　　　Defendant reported that he previously worked as a bolt maker for Fontana Fastener in Indiana in 2019. He claimed that he stopped working there because of an injury, but documentation from the human resources department indicated that he was terminated due to " 'attendance.' " Defendant also claimed he worked at JC Construction as a laborer from 2011 to 2018. The interviewer had not received any verification of employment from JC Construction at the time of her report.

¶ 15　　　　The officer who completed the PSI reported that she met with defendant for the PSI interview on March 11, 2020. It was her intention to interview defendant and then take him into custody on an outstanding warrant. The officer did not discuss the warrant with defendant. The officer left the room to make some copies. When she returned, defendant requested permission to

use the restroom. A few minutes later, the officer saw defendant and a companion run across Front Street, enter a vehicle, and drive away. Defendant was the driver, even though his driving privileges were suspended. Upon returning to the interview room, the officer realized she left defendant's PSI case file on the desk when she left to make copies, and the outside of the file reflected the issuance of the warrant earlier that morning. The officer believed defendant saw that and then asked to use the restroom and fled.

¶ 16    The State indicated that it had no evidence in aggravation but provided the trial court with a document from the United States District Court indicating that defendant was charged in January 2024 with distributing cocaine, distributing methamphetamine, and unlawfully transporting a firearm. The court admitted that document into evidence. In mitigation, defendant provided a letter from JC Construction, LLC, dated June 24, 2024, indicating that defendant had been employed with that company "for a second time since May 20, 2024." That document was admitted into evidence over no objection. Defendant provided no other evidence in mitigation.

¶ 17    The State recited defendant's criminal history, which included several convictions for possession of a controlled substance and stated his "violation reports" showed "he's not following the rules." The State indicated that the only mitigation from the State's perspective was that "he pled guilty to a charge." The State asked the court to impose an extended-term prison sentence of nine years.

¶ 18    Defense counsel pointed out that defendant "has attended some forms of education," indicating that he graduated *summa cum laude* from Lincoln College and attended some classes at Wren [*sic*] Lake College. Defense counsel pointed out that "this is a probationable offense" and asked for "a community-based sentence." Counsel also noted that defendant showed proof of employment from a construction company where he appeared to be working.

¶ 19        The trial court stated that it "considered all the [PSI], [and] all statutory factors in aggravation and mitigation." The court found some mitigating evidence related to "defendant's upbringing," finding "he had a difficult family situation to say the least." The court also noted that defendant had a history of employment "on and off" for at least two different companies. The court stated: "There are other factors in mitigation that the Court is aware of contained in the [PSI]."

¶ 20        With respect to aggravation, the trial court stated:

"[T]he defendant has an extensive prior record dating back to the late '90s. Serious violence. He has a very poor record on parole having been placed on parole, having that parole revoked a couple of times. He has a prior record on probation. His prior record is extensive, consisting of nine felony convictions. He's had several terms in the Department of Corrections, several unsuccessful terms of probation. In the past nine years, a bunch of traffic, some lesser offenses. The defendant, at this time this [PSI] was prepared, had a pending case out of multiple jurisdictions in multiple states. He had a matter pending in federal court when this [PSI] was prepared.

The defendant submitted his plea back in 2020 to Count 7. Then the defendant failed to appear for his sentencing hearing. The case remained pending until—pending sentencing until May of 2024 when the defendant initially pled guilty in this case. He went upstairs for the preparation of a [PSI]. The defendant was meeting with his probation officer. *** It looks like [defendant] requested permission to use the restroom, which was allowed. Shortly thereafter, probation officer looked out the window facing Front Street and saw the defendant and another individual running across the street, hop in a car and fleeing the scene. The defendant has an extensive history of failure to appear and/or warrants being issued

- 6 -

for his arrest.

The Court has considered all aggravating factors as set forth in the statute. Again, I considered all relevant factors that a Court would consider. The Court finds that based upon [defendant's] history of non-compliance, his history of failing to show up in court, and affirmatively fleeing the Court, there is absolutely zero chance in this Court's mind that he would ever successfully complete a period of probation on this case. The Court believes that a period of imprisonment is necessary for the protection of the public. The court believes that a sentence of probation would deprecate the seriousness of the offender's conduct and be inconsistent with the ends of justice. Again, I have considered all statutory factors in mitigation. I've considered all mitigating factors. I see nothing—when considering all of those factors, the Court believes that the appropriate sentence in this case is a sentence of 10 years in the Illinois Department of Corrections."

¶ 21        Four days later, on September 27, 2024, defendant filed "Defendant's Motion for New Sentencing Hearing Pursuant to 725 ILCS 5/115-4.1, or in the Alternative, Motion to Reconsider Sentence." Defendant was arrested on March 1, 2025.

¶ 22        On March 20, 2025, the trial court held a hearing on defendant's motion. Defendant argued that he was not properly admonished regarding sentencing *in absentia* because the last time the court mentioned it was in March 2020, more than four years before his sentencing hearing. The State argued that the admonishment was sufficient. The State further argued that defendant was not entitled to a new sentencing hearing because his failure to appear at his sentencing was his fault and due to circumstances within his control. The court found that defendant was properly admonished and that "the defendant's refusal to appear was willful."

¶ 23    In discussing the propriety of defendant's sentence, the trial court stated that it considered the PSI, which "reflects an extensive prior record of multiple prior [Illinois Department of Corrections] commitments." The court also noted that the PSI "reflects multiple out of state pending cases involving warrants for the defendant's arrest" as well as "federal charges against the defendant." The court stated that it "considered all relevant factors in that [PSI], both in aggravation and mitigation," and "then imposed what it considered to be an appropriate sentence in this case." Thus, the court denied defendant's motion. Defendant filed a *pro se* motion for leave to file a late notice of appeal on June 20, 2025, which we granted. On the same day, we appointed the Office of the State Appellate Defender to represent defendant. Thereafter, on July 8, 2025, the appellate court granted defendant's motion for leave to file another late notice of appeal to correct an error in the first one. In the second notice of appeal, the date of the judgment appealed was March 20, 2025, and the nature of the order appealed was "Conviction, Sentence, and Denial of Post-Plea Motion."

¶ 24                              II. ANALYSIS

¶ 25                              A. Jurisdiction

¶ 26    While the State does not dispute that jurisdiction exists in this case, we have an independent duty to ensure that we have jurisdiction. *People v. O'Connor*, 313 Ill. App. 3d 134, 135 (2000). We review *de novo* whether we have jurisdiction over an appeal. *People v. Johnson*, 2019 IL App (4th) 170622, ¶ 11.

¶ 27    Defendant outlines an argument about why we have jurisdiction of this appeal pursuant to section 115-4.1(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1(e) (West 2024)), which provides a statutory mechanism for a defendant who was tried or sentenced *in absentia* to challenge the judgment collaterally. See *People v. Pontillo*, 267 Ill. App.

3d 27, 33 (1994) (explaining that section 115-4.1(e) is a collateral remedy, analogous to a postconviction petition, in cases where a defendant has been convicted *in absentia* "and will support an appeal separate from a direct appeal of the underlying judgment"). However, our jurisdiction of this appeal does not depend on section 115-4.1(e) of the Code. As explained below, we have jurisdiction of this cause under the rules authorizing direct appeals from judgments entered pursuant to open guilty pleas.

¶ 28 Defendant entered an open guilty plea on March 2, 2020. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017) (establishing that a plea is nonnegotiated, and therefore open, where the prosecution does not bind itself to a specific sentence or range and does not make sentencing concessions). Defendant was sentenced *in absentia* on September 23, 2024. Just four days later, defendant filed a motion directed against the judgment, which he labeled as a "Motion for New Sentencing Hearing Pursuant to 725 ILCS 5/115-4.1, or in the Alternative, Motion to Reconsider Sentence." The motion to reconsider his sentence—which is the aspect of the motion that defendant focuses on in this appeal—was a proper postplea motion that served as a prerequisite for taking a direct appeal from the sentence entered on an open guilty plea. See Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024) (providing that a defendant may not appeal a judgment entered upon an open guilty plea unless, within 30 days of sentencing, he files either a motion to reconsider the sentence or a motion to withdraw the plea and vacate the judgment).

¶ 29 The time for filing a notice of appeal was tolled until the trial court ruled on defendant's postplea motion. See Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024) ("[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after entry of the order disposing of the motion."). On March 20, 2025, the court denied defendant's

motion in its entirety. Thus, defendant's notice of appeal was due within 30 days of March 20, 2025.

¶ 30 Defendant did not file a notice of appeal within the 30-day deadline. However, on June 17, 2025, defendant filed a timely motion for leave to file a late notice of appeal pursuant to Illinois Supreme Court Rule 606(c) (eff. Apr. 15, 2024), which provides:

> "[O]n motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or on motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing."

Pursuant to this rule,

> "the appellate court can allow a defendant to file a late notice of appeal within 30 days of the expiration of the appeal period, if the defendant shows a reasonable excuse, or within six months of the expiration of the appeal period, if the defendant shows a meritorious issue and a lack of culpable negligence." *People v. Ross*, 229 Ill. 2d 255, 264 (2008).

On June 20, 2025, this court allowed defendant's motion to file a late notice of appeal. On July 8, 2025, we allowed defendant's motion to file a new late notice of appeal to correct an error in the first one.

¶ 31 Because defendant filed a proper and timely postplea motion directed at the sentencing judgment and then obtained leave from the appellate court to file a late notice of appeal once the trial court denied that motion, we have jurisdiction of this cause as a direct appeal. Our jurisdiction does not depend on section 115-4.1(e) of the Code, which provides a means to challenge a judgment collaterally.

¶ 32                                B. Excessive Sentence

¶ 33 Defendant was charged with an extended-term Class 3 felony, subjecting him to up to 10 years in prison. See 730 ILCS 5/5-4.5-40(a) (West 2024). Defendant argues that the trial court's 10-year prison sentence is excessive because (1) it is disproportionate to the seriousness of the offense, (2) the court made a factual misstatement in sentencing, and (3) it does not reflect the mitigating evidence.

¶ 34 The trial court possesses substantial discretion in fashioning an appropriate sentence within statutory limits. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Within the statutory range, the court is charged with fashioning a sentence based on the particular circumstances of the individual case, including the nature of the offense and the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Fern*, 189 Ill. 2d at 53, 55. "The sentencing judge is to consider 'all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding.' " *Fern*, 189 Ill. 2d at 55 (quoting *People v. Barrow*, 133 Ill. 2d 226, 281 (1989)).

¶ 35 A reviewing court gives great deference to the trial court's judgment regarding sentencing because the court, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than a reviewing court. *Fern*, 189 Ill. 2d at 53. In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not

substitute its judgment for that of the trial court merely because it would have weighed the factors differently. *Fern*, 189 Ill. 2d at 53. "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54.

¶ 36 The range of sentences permissible for a certain offense is set by statute. *Fern*, 189 Ill. 2d at 55. Within that statutory range, the trial court is charged with fashioning a sentence based on the particular circumstances of the individual case, including the nature of the offense and the character of the defendant. *Fern*, 189 Ill. 2d at 55.

¶ 37 1. *Whether the Sentence Was Disproportionate to the Seriousness of the Crime*

¶ 38 Defendant first contends that the 10-year sentence the trial court imposed "was disproportionate to the seriousness of the alleged crime." Defendant asserts in his brief that his crime was not "serious" because he simply sat as a passenger in a vehicle when two drug transactions occurred. However, the facts provided at the guilty plea hearing tell a different story. According to the factual basis provided by the State, which defendant agreed to, defendant was the passenger during the first drug transaction. However, during the second transaction, the State indicated that defendant was the driver of the vehicle. The factual basis further provided that when he was approached by police after the second transaction, defendant drove aggressively and barely missed hitting a squad car before hitting a civilian's car in the process of fleeing from the scene of the crime. While defendant was charged separately for that conduct, there is no reason that the court could not consider it when analyzing the seriousness of the offense for which he was being sentenced: conspiracy to commit unlawful delivery of a controlled substance.

¶ 39 In his appellate brief, defendant suggested that his conduct in selling drugs, specifically cocaine, was not serious because "although unlawful, [his actions] resulted in no

damage to property nor bodily injury." We disagree. As explained above, defendant did cause damage to property during his second drug transaction with police when he hit a civilian's vehicle.

¶ 40 Additionally, Illinois courts have found that selling drugs is a serious crime, noting that cocaine is a "dangerous drug[ ]" and that "the serious nature of the selling of the cocaine for substantial sums of money in disregard of the effect on others" justifies a prison sentence. *People v. Smith*, 42 Ill. App. 3d 546, 548 (1976). These were not isolated sales, either. Defendant has been convicted and charged several other times for possession and delivery of drugs and still continued his criminal behavior, with other drug delivery cases pending in Illinois, Tennessee, and federal courts. "[S]erious harm can result from the selling of drugs." *People v. Stephens*, 83 Ill. App. 3d 199, 202 (1980). "[T]he legislature deems the offense of delivery or sale of narcotic drugs most damaging to the peace and welfare of the citizens of the State, and one which merits severe penalty." *Smith*, 42 Ill. App. 3d at 549.

¶ 41 The trial court specifically found that it was necessary for defendant to receive the maximum sentence for the "protection of the public," recognizing the seriousness of defendant's offense of conspiracy to commit unlawful delivery of a controlled substance. For these reasons, defendant's sentence was not disproportionate to the seriousness of his crime.

¶ 42 2. *Whether the Trial Court Relied on an Improper Fact*

¶ 43 Next, defendant argues that the trial court relied on an improper fact when it mentioned during sentencing that defendant committed "[s]erious violence." In determining whether the trial court relied on improper considerations at sentencing, reviewing courts should consider the record as a whole and should not focus on isolated statements. *People v. Walker*, 2012 IL App (1st) 083655, ¶ 30. A court's isolated remark or misstatement that does not play a significant role in the imposition of a sentence is not a basis to resentence the defendant. See *People*

*v. Sansorez*, 156 Ill. App. 3d 986, 988 (1987). A sentence that falls within the statutory sentencing range for an offense is presumed to be proper. *Walker*, 2012 IL App (1st) 083655, ¶ 30.

¶ 44      There is a strong presumption that the trial court's sentence was based on proper legal reasoning. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 55. An improper isolated remark made in passing does not require resentencing unless the defendant shows the trial court relied on the improper fact when imposing the defendant's sentence. *People v. Rademacher*, 2016 IL App (3d) 130881, ¶ 42; *People v. Cervantes*, 2014 IL App (3d) 120745, ¶ 44. "To obtain remand for resentencing, a defendant 'must show more than the mere mentioning of an improper fact.' " *Rademacher*, 2016 IL App (3d) 130881, ¶ 42 (quoting *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007)).

¶ 45      Here, given the nature of defendant's criminal history that is discernable from the PSI, the trial court's reference during sentencing to "[s]erious violence" appeared to be a misstatement. Because defendant did not object when the statement was made or raise the issue in a postplea motion, we do not know what the court was referring to when he made that comment. However, reviewing the record as a whole leads to the conclusion that the court did not place any weight on any "[s]erious violence" defendant allegedly committed. Aside from saying those two words one time during the sentencing hearing, the court never again mentioned that defendant committed any violence and, instead, focused on the proper aggravating and mitigating factors in this case.

¶ 46      Under the circumstances, defendant did not meet his burden of establishing that that the trial court's statement of two words reflected that it considered an improper fact in sentencing, justifying reversal of defendant's sentence. See *Rademacher*, 2016 IL App (3d) 130881, ¶ 42; *Cervantes*, 2014 IL App (3d) 120745, ¶ 44; *Sansorez*, 156 Ill. App. 3d at 988.

- 14 -

¶ 47                    3. *Whether the Sentence Reflects the Mitigating Factors*

¶ 48          Finally, defendant argues that the trial court's sentence does not reflect the mitigating factors. We disagree. "There is a presumption that a trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). The existence of mitigating factors does not require the trial court to impose the minimum sentence or preclude imposition of the maximum sentence. *Flores,* 404 Ill. App. 3d at 158.

¶ 49          Here, defendant did not overcome the presumption that the trial court considered all relevant mitigating factors. The court specifically stated that it considered all relevant mitigating factors when imposing its sentence and specifically mentioned some of those factors, including defendant's difficult childhood and his record of employment. The court further stated that it was aware of and considered other mitigating factors as well. Despite those mitigating factors, the court determined that a 10-year sentence was necessary based on the crime defendant committed and his long history of criminal behavior.

¶ 50          Defendant is asking us to reweigh the aggravating and mitigating factors. However, "it is not our duty to reweigh the factors involved in [the court's] sentencing decision." *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). Defendant has failed to overcome the presumption that the trial court properly considered all relevant factors because he has not provided any evidence to the contrary. Moreover, just because mitigating factors existed did not require the court to sentence defendant to below the maximum sentence. See *Flores*, 404 Ill. App. 3d at 158.

¶ 51          We reject defendant's argument that the trial court's sentencing decision in this case was excessive for any of the reasons he asserts.

¶ 52          III. CONCLUSION

¶ 53   For the reasons stated, we affirm the trial court's judgment.

¶ 54   Affirmed.